NOT FOR PUBLICATION

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

|  |  |
|---|---|
| NORTH JERSEY BRAIN AND SPINE CENTER | Civil Action No. 13-74 (ES) |
| Plaintiff, | **OPINION** |
| v. |  |
| SAINT PETER'S UNIVERSITY HOSPITAL |  |
| Defendant. |  |

**SALAS, DISTRICT JUDGE**

I. **Introduction**

Pending before this Court is Defendant Saint Peter's University Hospital's ("St. Peter's" or "Defendant") motion to dismiss Plaintiff North Jersey Brain and Spine Center's ("NJBSC" or "Plaintiff") Complaint pursuant to Fed. R. Civ. P. 12(b)(1) and 12(b)(6). (D.E. No. 5). The Court has considered the parties' submissions in support of and in opposition to the instant motion, and decides the matter without oral argument pursuant to Fed. R. Civ. P. 78(b). For the reasons set forth below, the Court DENIES Defendant's motion to dismiss Plaintiff's Complaint.

II. **Jurisdiction**

This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331 and the Employee Retirement Income Security Act of 1974, as amended ("ERISA"), 29 U.S.C. §§ 1001 *et seq.*

III. **Background**

Plaintiff is an out-of-network medical provider that specializes in surgery and treatment of the brain and spinal cord. (D.E. No. 1, Complaint ("Compl.") ¶ 3). Plaintiff performed

"emergent surgical and other medical procedures on [patient] W.R."[1] in February and March 2011. (*Id*. ¶ 3). Defendant is W.R.'s employer and the sponsor of W.R.'s health care plan. (*Id*. ¶ 4). Plaintiff alleges that Defendant has not properly paid reimbursement claims for emergency neurological procedures. (*Id*. ¶¶ 5, 7).

Following the rendering of medical services, Plaintiff submitted "bills to [Defendant], or its administrator Horizon Blue Cross Blue Shield ("BCBS"), for processing and payment" pursuant to an assignment of benefits signed by W.R. (*Id*. ¶ 6). Plaintiff alleges that despite this submission of bills, "said procedures have not been properly paid by [Defendant]." (*Id*.). Specifically, Plaintiff contends that Defendant "arbitrarily and capriciously reduced payment by skewing the appropriate 'Reasonable and Customary' charges that should have been paid and/or arbitrarily and capriciously reduced payment by failing to process the procedures in accordance with the emergent nature of the procedures." (*Id*. ¶ 7).

Plaintiff appealed the reimbursement decisions with BCBS and avers that "[a]ll appeals have now been exhausted and/or further appeals would be futile because [Defendant] and/or [BCBS] have determined that no further benefits will be paid." (*Id*. ¶ 8). Thereafter, "as the assignee of benefits from W.R.," Plaintiff filed suit under §§ 1132(a)(1)(B) and (g)(1) of ERISA to recover benefits due and attorneys' fees. (*Id*. ¶¶ 1, 9, 13, 16). Defendant's motion to dismiss Plaintiff's Complaint for lack of standing and failure to state a claim pursuant to Fed. R. Civ. P. 12(b)(1) and 12(b)(6) is now ripe for adjudication. (D.E. No. 5).

IV.     **Legal Standards**

   A.     **12(b)(1)**

A motion to dismiss for lack of standing is properly brought pursuant to Fed. R. Civ.P. 12(b)(1) because standing is a jurisdictional matter. *See St. Thomas–St. John Hotel & Tourism*

---

[1] Plaintiff is identified as W.R. in the Complaint.

*Ass'n v. Gov't of the U.S. V.I.*, 218 F.3d 232, 240 (3d Cir. 2000) ("The issue of standing is jurisdictional."); *Kauffman v. Dreyfus Fund, Inc.*, 434 F.2d 727, 733 (3d Cir. 1970) ("[W]e must not confuse requirements necessary to state a cause of action . . . with the prerequisites of standing.").

Pursuant to Rule 12(b)(1), the Court must accept as true all material allegations set forth in the complaint, and must construe those facts in favor of the nonmoving party. *See Warth v. Seldin*, 422 U.S. 490, 501 (1975); *Storino v. Borough of Point Pleasant Beach*, 322 F.3d 293, 296 (3d Cir. 2003). On a motion to dismiss for lack of standing, the plaintiff "'bears the burden of establishing' the elements of standing, and 'each element must be supported in the same way as any other matter on which the plaintiff bears the burden of proof, i.e., with the manner and degree of evidence required at the successive stages of the litigation.'" *FOCUS v. Allegheny Cnty. Ct. Com. Pl.*, 75 F.3d 834, 838 (3d Cir. 1996) (quoting *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992)).

**B.    12(b)(6)**

For a complaint to survive dismissal, it "must contain sufficient factual matter, accepted as true, 'to state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 570). A claim has facial plausibility when "the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. (internal citation omitted). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.*

In evaluating the sufficiency of a complaint, a court must accept all well-pleaded factual allegations contained in the complaint as true and draw all reasonable inferences in favor of the

non-moving party. *See Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 234 (3d Cir. 2008). But, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions," and "[a] pleading that offers 'labels and conclusions' or a 'formulaic recitation of the elements of a cause of action will not do.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555).

Furthermore, "[when] deciding a Rule 12(b)(6) motion, a court must consider only the complaint, exhibits attached [thereto], matters of the public record, as well as undisputedly authentic documents if the complainant's claims are based upon these documents." *Mayer v. Belichick*, 605 F.3d 223, 230 (3d Cir. 2011); *see also In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1426 (3d Cir. 1997) ("[A]n exception to the general rule is that a document *integral to or explicitly relied* upon in the complaint may be considered without converting the motion [to dismiss] into one for summary judgment.") (emphasis in original) (citation omitted & internal quotation marks omitted).

With these standards in mind, the Court analyzes the parties' arguments.

**V.  Analysis**

    **A.  Provider Standing Under ERISA**

Defendant moves to dismiss the Complaint for lack of standing as an assignee under ERISA, alleging: 1) there was no valid assignment of plan benefits; 2) the plan's anti-assignment provision barred any assignment; and 3) Defendant did not waive its right to enforce the anti-assignment clause. (D.E. No. 5-4, Brief in Support of Defendant St. Peter's University Hospital's Motion to Dismiss the Complaint Pursuant to Fed. R. Civ. P. 12(b)(1) and (b)(6) for Lack of Standing and Failure to State a Claim ("Def. Br.") 6-10).

### 1. Plaintiff Has Proper Standing by Assignment Under ERISA

Defendant argues that Plaintiff's assignment "simply states that W.R. . . . allow[s] Plaintiff to pursue an internal Plan appeal" and that "[t]his limited authorization should not be construed broadly as a general assignment of benefits or otherwise grant Plaintiff the right to pursue claims against [Defendant] in court." (*Id.* 6). In opposition, Plaintiff states that it does properly allege that it brought the suit as assignee of W.R. and further attaches an "Insurance Authorization And Assignment" form that it alleges confers standing to it. (D.E. No. 7, Plaintiff's Brief in Opposition to Defendant's Motion to Dismiss ("Pl. Opp.") 5-6; D.E. No. 7-2, Certification of Lee Goldberg ("Goldberg Cert."), Ex. B).

Under ERISA's § 502(a) civil enforcement provision, standing is generally limited to "participants and beneficiaries." 29 U.S.C. § 1132(a)(1)(B); *Pascack Valley Hosp. Inc. v. Local 464A UFCW Welfare Reimbursement Plan*, 388 F.3d 393, 400 (3d Cir. 2004). The Third Circuit has not addressed the question of whether a health care provider may obtain standing to sue under § 502 by assignment from a plan participant or beneficiary. *See Pascack Valley*, 388 F.3d at 401 n.7; *Cmty. Med. Ctr. v. Local 464A UFCW Welfare Reimbursement Plan*, 143 F. App'x 433, 435 (3d Cir. 2005). However, the Third Circuit has acknowledged that "almost every circuit that has addressed the issue has ruled that a health care provider can assert a claim under § 502(a) when a beneficiary or participant has assigned to the provider the individual's benefits under the plan." *Pascack Valley*, 388 F.3d at 401. Since *Pascack Valley*, courts in this district have interpreted the Third Circuit's statements as an indirect affirmation of derivative standing for health care providers. *See, e.g.*, *Sportscare of Am., P.C. v. Multiplan, Inc.*, No. 10-4414, 2011 WL 500195, at *4 (D.N.J. Jan. 24, 2011) (finding properly pleaded facts established standing by assignment despite the fact that provider plaintiff did not attach an actual assignment form to the

5

Complaint); *Zahl v. Cigna Corp.*, No. 09–1527, 2010 WL 1372318, at *2 (D.N.J. Mar. 31, 2010) ("It is settled in this District that Zahl, as an assignee of these rights, stands in the shoes of his patients and may sue on their behalf to collect unpaid benefits."); *Glen Ridge Surgicenter, LLC v. Horizon Blue Cross Blue Shield of N.J., Inc.*, No. 08–6160, 2009 WL 3233427 at *4 (D.N.J. Sept. 30, 2009) (implicitly accepting that an ambulatory surgical center has standing to sue under ERISA as a valid assignee); *Gregory Surgical Serv., LLC v. Horizon Blue Cross Blue Shield of N.J., Inc.*, No. 06–0462, 2007 WL 4570323, at *3 (D.N.J. Dec. 26, 2007) (same); *Wayne Surgical Ctr., LLC v. Concentra Preferred Sys., Inc.*, No. 06–928, 2007 WL 2416428, at *4 (D.N.J. Aug. 20, 2007) (finding that a health care provider has standing to sue under ERISA as a valid assignee).

This Court finds *N. Jersey Brain & Spine Ctr. v. Conn. Gen. Life Ins. Co.*, No. 10-4260, 2011 WL 4737067 (D.N.J. June 30, 2011), *R&R adopted by* 2011 WL 4737063 (D.N.J. Oct. 6, 2011) instructive. There, the court adopted a Report and Recommendation by a Magistrate Judge and denied a motion to dismiss. 2011 WL 4737063, at *1. The court found that the plaintiff's[2] Insurance Authorization and Assignment form[3] provided proper standing by assignment because it "unequivocally establishe[d] that the only benefit at issue, i.e., the benefit of reimbursement, was in fact assigned." *Id.* at *2. On Report and Recommendation, the court explained that "an assignment of a right to reimbursement logically include[d] the right to

---

[2] The plaintiff in that case is the same plaintiff in this case—North Jersey Brain and Spine Center.

[3] The same assignment form was submitted in the instant case. *Compare N. Jersey Brain & Spine Ctr.*, 2011 WL 4737067, at *5 (noting that assignment form stated "I hereby assign to North Jersey Brain & Spine Center all payments for medical services rendered to myself or my dependents (internal quotation marks & citation omitted)), *with* Pl. Opp, Goldberg Cert., Ex. B (stating "I authorize [Plaintiff] to appeal to my insurance company on my behalf. . . . I hereby assign to [Plaintiff] all payments for medical services rendered to myself or my dependents.").

judicially enforce the reimbursement rights, and thus, create[d] a valid assignment under ERISA." 2011 WL 4737067, at *6.

This Court previously found the decision in *Sportscare of America, P.C.* persuasive. *See Premier Health Center, P.C. v. UnitedHealth Group*, No. 11-425, 2012 WL 1134508, at *6 (D.N.J. Apr. 4, 2012). In *Premier Health Center*, the Court agreed that a party "need not attach the assignments to their notice of removal or supply them with their briefs" if "Plaintiff has unequivocally alleged that assignments exist and has pleaded that it is relying on them to support is right to recovery." *Id.* The Court found that "nothing more is required" other than well pleaded allegations. *Id.* at *7.

Here, Plaintiff alleges that it "submitted bills . . . for processing and payment" "pursuant to an assignment of benefits." (Compl. ¶ 6). Plaintiff further avers that it "appealed many of the adverse determinations" and, "as the assignee of benefits from W.R.," it seeks damages and benefits under ERISA. (*Id.* ¶¶ 8-9). The Complaint also states, "NJSBC is entitled to recover said medical expense benefits pursuant to ERISA, as an assignee of the benefits from W.R., pursuant to the benefit plan at issue." (*Id.* ¶ 12).

This Court acknowledges that the allegations did not reproduce the actual assignment language. However, these allegations are buttressed by the actual assignment forms, which are attached to the motion papers. Defendant attaches an assignment form titled, "AUTHORIZATION TO APPEAL TO MY INSURANCE COMPANY" and signed by patient W.R.[4] The form states:

---

[4] The Court acknowledges that, generally, when considering a motion to dismiss, the Court "may not consider matters extraneous to the pleadings." *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d at 1426. However, the Court may base its analysis of the case on both the "facts alleged in the Complaint and the documents on which the claims made therein were based." *Id.* at 1425. Here, both parties submit integral and authentic documents on which the ERISA claim is based, and which are necessary to the resolution of the issue of provider standing. As such, the Court in

7

> I, W.R., the undersigned, hereby request and authorize North Jersey Brain and Spine Center and its representative, Lee Goldberg, Billing and Financial Manager, to file an appeal with Horizon BC/BS of NJ on my behalf. My signature indicates that I consent to the provider's action on my behalf.

(D.E. No. 5-1, Declaration of Cheryl DeFalco in Support of Defendant's Motion to Dismiss Plaintiff's Complaint, Ex. B).

Furthermore, Plaintiff submits a second form executed by W.R. and titled, "INSURANCE AUTHORIZATION AND ASSIGNMENT." (Pl. Opp., Goldberg Cert., Ex. B). Said authorization form provides, in pertinent part: "I authorize [Plaintiff] to appeal to my insurance company on my behalf. . . . I hereby assign to [Plaintiff] all payments for medical services rendered to myself or my dependents." (*Id.*). Significantly, Plaintiff contends that "two federal court judges in this District have already found that this same assignment form, used by NJBSC with all of its patients, is 'sufficient to establish [NJBSC's] derivative standing under ERISA.'" (Pl. Opp. 5-6 (citing *N. Jersey Brain & Spine Ctr.*, 2011 WL 4737067, at *5 & *N. Jersey Brain & Spine Ctr.*, 2011 WL 4737063, at *2)).

Thus, the Court finds that the pleaded allegations, namely that an assignment exists, coupled with the two forms that assign a right to "file an appeal" and a right to "all payments for medical services" plainly establish that the only benefit at issue—the right to reimbursement—was in fact assigned. Construing the assignments to only narrowly encompass the right to appeal an adverse reimbursement, as Defendant would suggest, would undermine the obvious intent of the assignment—the right to seek proper reimbursement for medical procedures performed.

Relying on *Franco*, however, Defendant claims that Plaintiff's Complaint "failed to allege the existence of an assignment agreement, or set forth its specific language." (D.E. No. 8-

---

its discretion considers the integral documents on which the case is based, namely the Plan, Assignment forms and Account Activity report, without converting the motion to dismiss into a motion for summary judgment.

1, Reply Brief in Support of Defendant St. Peter's University Hospital's Motion to Dismiss the Complaint Pursuant to Fed. R. Civ. P. 12(b)(1) and (b)(6) for Lack of Standing and Failure to State a Claim ("Def. Reply") 2 (citing *Franco v. Conn. Gen. Life Ins. Co.*, 818 F. Supp. 2d 792, 810 (D.N.J. 2011))). In *Franco*, the court granted the defendant's motion to dismiss for lack of standing under ERISA because the plaintiff insufficiently pleaded the content of her assignment. 818 F. Supp. 2d at 810. The court stated that "[s]imply asserting that [plaintiff patients] have assigned their [plan benefits] fails to plausibly establish that [plaintiff] has obtained at least one actual assignment to assert a claim for benefits and pursue litigation under ERISA." *Id.* at 811. But, here, the Court is faced with not only pleaded allegations that support that an assignment exists, but also with the actual assignments that confer standing. Additionally, the procedural posture of the *Franco* class action, as well as the court's concerns about the potential for double recovery since both plan subscribers and providers sought reimbursement there, do not apply in this matter.

### 2. Plan's Anti-Assignment Clause is Enforceable

Defendant argues that, "[e]ven if the Court were to find that that the limited authorization form signed by W.R. could be construed as an assignment of benefits, the Plan at issue in this matter includes an anti-assignment clause . . . ." (Def. Br. 7). In opposition, Plaintiff contends that Defendant waived its right to enforce the anti-assignment clause. (Pl. Opp. 8). The Court first addresses the enforceability the anti-assignment clause and then addresses waiver.

The Third Circuit has not addressed the enforceability of anti-assignment clauses in health care plans. *See, e.g.*, *Briglia v. Horizon Healthcare Serv., Inc.*, No. 03-6033, 2005 WL 1140687, at *4 (D.N.J. May 13, 2005). However, other courts in this District have found that

anti-assignment clauses in health care plans are enforceable. *See, e.g.*, *Cohen v. Indep. Blue Cross*, 820 F. Supp. 2d 594, 603-04 (D.N.J. 2011) ("Fatal to [Plaintiff's assertion of standing] is the Plan's anti-assignment clause which forbids the type of assignment arranged between [Plaintiff] and [Defendant]."). Many other circuits have found that anti-assignment clauses in health care plans are enforceable. *See, e.g.*, *Physicians Multispecialty Grp. v. Health Care Plan of Horton Homes, Inc.*, 371 F.3d 1291, 1294-96 (11th Cir. 2004) ("[A]n unambiguous anti-assignment provision in an ERISA-governed welfare benefit plan is valid and enforceable."); *City of Hope Nat'l Med. Ctr. v. Healthplus, Inc.*, 156 F.3d 223, 229 (1st Cir. 1998) ("Consistent with the other circuits which have addressed this issue, we hold that ERISA leaves the assignability or non-assignability of health care benefits under ERISA-regulated welfare plans to the negotiations of the contracting parties."); *St. Francis Reg'l Med. Ctr. v. Blue Cross & Blue Shield of Kan., Inc.*, 49 F.3d 1460, 1464-65 (10th Cir. 1995) ("ERISA's silence on the issue of the assignability of insurance benefits leaves the matter to the agreement of the contracting parties."); *Davidowitz v. Delta Dental Plan of Cal., Inc.*, 946 F.2d 1476, 1478 (9th Cir. 1991) ("As a general rule of law, where the parties' intent is clear, courts will enforce non-assignment provisions."); *Washington Hosp. Ctr. Corp. v. Grp. Hospitalization & Med. Servs., Inc.*, 758 F. Supp. 750, 755 (D.D.C. 1991) (holding that an anti-assignment provision was valid and enforceable after concluding that enforcement of the provision was not contrary to public policy).

Defendant's plan provides that: "Subject to applicable health law, the Health Care Program does not permit you to assign, sell, transfer, or pledge your benefits." (D.E. No. 5-1, Declaration of Cheryl DeFalco in Support of Defendant's Motion to Dismiss Plaintiff's Complaint, Ex. A at 58 (the "Plan")). The Court agrees with other courts in this and other

circuits–anti-assignment provisions in a health care plan are enforceable. Indeed, the Plan's language is unequivocal—a Plan participant may not assign his or her benefits. Accordingly, the Court finds that the Plan's anti-assignment clause is valid and enforceable and, as such, Plaintiff's standing by assignment exists only if Defendant waived its right to enforce the anti-assignment clause.

### 3. Defendant Waived Ability to Enforce the Anti-Assignment Clause

Plaintiff alleges that, "[t]o the extent that [Defendant] may assert an anti-assignment provision, that provision . . . has been waived by and through the course of dealings between NJBSC and [Defendant]." (Compl. ¶ 6). Defendant argues that "no such waiver occurred here." (Def. Br. 9). As to the "Authorization to Appeal to my Insurance Company" form, Defendant contends that it gave Plaintiff "limited permission to handle W.R.'s internal appeal," (Def. Reply 6), and therefore, Defendant "never demonstrated an intent to waive the anti-assignment provision," (Def. Br. 10). Further, Defendant also asserts that the "Insurance Authorization and Assignment" form was never shared with Defendant and therefore the "anti-assignment clause could not have been knowingly, voluntarily, and intentionally waived by [Defendant]." (Def. Reply 6).

Waiver "is the voluntary relinquishment of a known right" and "must be voluntary and there must be a clear act showing the intent to waive the right." *Cnty. of Morris v. Fauver*, 153 N.J. 80, 104 (1998) (citing *W. Jersey Title & Guar. Co. v. Indus. Trust Co.*, 27 N.J. 144, 152 (1958)). Further, "waiver presupposes a full knowledge of the right and an intentional surrender . . . " of that right. *Id*. at 104-05. A party may waive an anti-assignment clause "by written instrument, a course of dealing, or even passive conduct, i.e., taking no action to invalidate the assignment vis-à-vis the assignee." *Gregory Surgical Serv.*, 2007 WL 4570323, at *3.

In *Gregory Surgical Services*, the court found that actions such as "discussions of patient coverage under health care policies, direct submission of claim forms, direct reimbursement of medical costs, and engagement in appeal processes" amounted to waiver of the right to enforce an anti-assignment clause. *Id*. at *4. The court further noted that "[a]lthough [the defendant's] direct payments to [the plaintiff] would not constitute a waiver if authorized under the [defendant's] plans at issue," the more involved dealings between the parties regarding the disputed claims without "invocation of the anti-assignment clause" impeded the defendant's ability to rely on the clause. *Id*.

The Court finds that Defendant's involvement with the reimbursement claims, through BCBS, constitutes a waiver of the anti-assignment clause. In the Complaint, Plaintiff alleges that it "submitted bills to [Defendant]" and "appealed many of the adverse determinations [ ] without success or the payment of additional benefits." (Compl. ¶¶ 6, 8). Plaintiff also attaches an Account Activity report for Patient W.R. that details interactions between Plaintiff and BCBS, and which include: making phone calls to BCBS; speaking with representatives of BCBS on the phone; and receiving letters explaining the denial of claim payments by BCBS. (Pl. Opp. Goldberg Cert., Ex. A ("Account Activity")). BCBS interacted voluntarily and repeatedly with Plaintiff without once invoking the anti-assignment clause. Such "passive conduct, i.e., taking no action to invalidate the assignment vis-à-vis the assignee," is sufficient to waive the right to invoke the Plan's anti-assignment clause. *See Gregory Surgical Serv.,* 2007 WL 4570323, at *3.

The Court finds Defendant's argument, that BCBS's communications on its behalf could not constitute waiver of the anti-assignment provision because the "Authorization to Appeal to my Insurance Company" form did not include assignment of benefits language, unavailing. (Def. Br. 10; Def. Reply 7). Specifically, Defendant claims that "[e]ngaging with [Plaintiff] in

12

presuit claims review d[id] not constitute a waiver" of the anti-assignment provision, because the authorization was limited and did not rise to the level of a full assignment. (Def. Reply 7). But, as this Court already explained the right to appeal encompasses the only relevant benefit, i.e. the right to seek proper reimbursement for medical procedures and therefore amounted to a full assignment. *See supra* discussion, at 8. Like the defendant in *Gregory Surgical Services* whose course of dealing constituted a waiver, BCBS is also estopped from disavowing Plaintiff's standing. 2007 WL 4570323, at *3-*4.

The Court is also not persuaded by Defendant's argument that it did not know about the "Insurance Authorization and Assignment" form and therefore could not have waived the right to enforce the anti-assignment clause. (Def. Reply 6). Because Defendant acknowledges that the Provider "Plaintiff is not a participant or beneficiary of the plan" and it engaged in the appeals process with BCBS, Defendant knew or should have known that Plaintiff pursued medical reimbursement from BCBS through rights assigned to it by patient W.R. (Def. Br. 6).

Accordingly, the Court finds that Defendant waived its right to enforce the anti-assignment clause and thus denies Defendant's motion to dismiss the Complaint for lack of standing by assignment pursuant to Rule 12(b)(1).

### B. Preemption

Defendant also argues that Count I of the Complaint is preempted by ERISA because the claim arises from a state regulation, N.J.A.C. 11:24-5.3."[5] (Def. Br. 12-14). Defendant argues that "Plaintiff will attempt to demonstrate in this case that because the medical services it provided to W.R. were allegedly 'emergency' in nature, it is entitled to enhanced fees beyond what would normally be paid to an Out-of-Network Provider under the Plan." (*Id.* 12). In

---

[5] Section 11:24-5.3 states, in relevant part, "carriers shall reimburse hospitals for and physicians for all medically necessary emergency and urgent health care services covered under the health benefit plan." N.J.A.C. § 11:24-5.3.

opposition, Plaintiff contends that its ERISA claim is an "enforcement action aris[ing] directly from the terms contained in the plan document," and is not based on any state regulation. (Pl. Opp. 11).

The Court finds no merit to Defendant's argument. Plaintiff bases its ERISA claim on § 1132(a)(1)(B) of ERISA, not § 11:24-5.3 of the New Jersey Administrative Code. (Compl. ¶¶ 10-14). Furthermore, Plaintiff alleges that Defendant "arbitrarily and capriciously reduced payment by skewing the appropriate 'Reasonable and Customary' charges that should have been paid." (*Id.* ¶ 7). The Plan itself contains "Reasonable and Customary" language when discussing reimbursements to providers like Plaintiff. (*See, e.g.*, Plan 11). Because the Plaintiff asserts a claim under ERISA, not § 11:24-5.3 of the New Jersey Administrative Code, and relies on language from the Plan, when discussing payment, the Court finds that Plaintiff's Complaint is brought under ERISA and not a state statute. Accordingly, the Court rejects Defendant's preemption argument.

### C. Failure to State a Claim Pursuant to 12(b)(6)

Defendant further argues that Count I of the Complaint "lacks any basis in fact" and as such should be dismissed. (Def. Br. 15). In response, Plaintiff contends that its Complaint adequately pleads an ERISA breach of contract claim. (Pl. Opp. 10).

Here, the Court finds that Plaintiff has properly pleaded a claim for recovery of benefits due pursuant to the Plan. Section 1132(a)(1)(B) allows "[a] civil action to be brought by a [Plan] participant or beneficiary to recover benefits due to him under the terms of the plan . . . ." 29 U.S.C. § 1132(a)(1)(B). Specifically, Plaintiff alleges it is owed medical reimbursements "pursuant to an assignment of benefits" signed by one of Defendant's patients. (Compl. ¶ 6). Plaintiff further avers that the terms of the Plan were breached when Defendant denied benefits

14

for medical procedures performed by Plaintiff. (*Id*. ¶ 13). Plaintiff also alleges "damage[s] in the amount equal to the amount of benefits to which the [P]laintiff should have been entitled to under the terms of the [Plan]." (*Id*. ¶ 14). Accordingly, accepting as true the factual allegations in the complaint and drawing all reasonable inferences in Plaintiff's favor, Plaintiff has adequately pleaded that benefits are due pursuant to the Plan, and thus Defendant's motion to dismiss pursuant to Rule 12(b)(6) is denied.

### D. Attorneys' Fees

Defendant requests attorneys' fees pursuant to § 1132(g)(1) of ERISA. (Def. Br. 15). Defendant claims that attorneys' fees should be awarded because "Plaintiff's claims are baseless on their face, warranting a statutory attorneys' fee award in favor of [Defendant]." (*Id.* 15).

ERISA allows an award of attorneys' fees to a prevailing party based on the Court's discretion. 29 U.S.C.A. § 1132(g)(1). The statute provides, in relevant part:

> In any action under this subchapter (other than an action described in paragraph (2)) by a participant, beneficiary, or fiduciary, the court in its discretion may allow a reasonable attorney's fee and costs of action to either party.

29 U.S.C. § 1132(g)(1). When determining whether the Court should award attorney's fees, five factors should be examined: (1) the offending parties' culpability or bad faith; (2) the ability of the offending parties to satisfy an award of attorney' fees; (3) the deterrent effect of an award of attorneys' fees; (4) the benefit conferred upon members of the pension plan as a whole; and (5) the relative merits of the parties' positions. *Fields v. Thompson Printing Co., Inc.*, 363 F.3d 259, 275 (3d Cir. 2004) (citing *Ursic v. Bethlehem Mines*, 719 F.2d 670, 673 (3d Cir. 1983)).

The Court will exercise its discretion and will deny the request for attorneys' fees. Plaintiff's Complaint has survived a motion to dismiss, and thus the Court finds that the facts do not suggest the presence of any bad faith.

## VI. Conclusion

Based on the above, the Court DENIES Defendant's motion to dismiss Plaintiff's Complaint.

s/*Esther Salas*  
**Esther Salas, U.S.D.J.**